UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL A. ACINELLI, JR.,<br><br>    Plaintiff,<br><br>    v.<br><br>ULYSSES VILLAMIL BANIGA, et al.,<br><br>    Defendants. | CASE NO. 1:15-cv-01616-MJS (PC)<br><br>**ORDER DIRECTING CLERK TO ASSIGN A DISTRICT JUDGE**<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS NON-COGNIZABLE CLAIMS**<br><br>**(ECF No. 1)** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. He has consented to Magistrate Judge jurisdiction (ECF No. 4) as have Defendants Baniga and Hill (ECF No. 19).

On May 25, 2016, the undersigned screened Plaintiff's complaint and concluded that it states a cognizable claim against Defendants Baniga and Hill for violation of the Eighth Amendment and against Defendant Baniga for negligent infliction of emotional distress, negligence, and medical malpractice, arising out of the treatment of Plaintiff's chronic gastrointestinal issues without providing a liquid nutritional supplement, therapeutic diet, or referral to a gastroenterologist. (ECF No. 7.) Claims against Defendants Nixon, Sheisha, and Does 1 through 10 were dismissed with leave to amend. Plaintiff was given the option to forego amendment and to proceed only on the

cognizable claims. (Id.) Plaintiff chose to proceed on the complaint as screened. (ECF No. 8.) The non-cognizable claims were dismissed for failure to state a claim and the action since has proceeded solely against Defendants Baniga and Hill. (ECF No. 9.)

I.      **Williams v. King**

Federal courts are under a continuing duty to confirm their jurisdictional power and are "obliged to inquire sua sponte whenever a doubt arises as to [its] existence[.]" Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 278 (1977) (citations omitted). On November 9, 2017, the Ninth Circuit Court of Appeals ruled that 28 U.S.C. § 636(c)(1) requires the consent of all named plaintiffs and defendants, even those not served with process, before jurisdiction may vest in a Magistrate Judge to dispose of a civil claim. Williams v. King, 875 F.3d 500 (9th Cir. 2017). Accordingly, the Court held that a Magistrate Judge does not have jurisdiction to dismiss a claim with prejudice during screening even if the plaintiff has consented to Magistrate Judge jurisdiction. Id.

Here, Defendants were not yet served at the time that the Court screened the complaint and they therefore had not appeared or consented to Magistrate Judge jurisdiction. Because the Defendants had not consented, the undersigned's dismissal of Plaintiff's claims is invalid under Williams. Because the undersigned nevertheless stands by the analysis in the screening order, I will below recommend to the District Judge that the non-cognizable claims be dismissed.

II.     **Findings and Recommendations on Complaint**

    A.      **Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion

thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

**B. Pleading Standard**

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

**C. Plaintiff's Allegations**

Plaintiff is currently incarcerated at the California Correctional Institution ("CCI") in Tehachapi, California. He brings this action against several Defendants: Dr. Ulysses

Villamil Baniga, Dr. K. Hill, Dr. S. Sheisha, Nurse Paul Nixon, and Medical Staff Does 1 through 10 ("Defendants"). Plaintiff alleges that Defendants denied him adequate medical care and thereby violated his right to be free from inhumane conditions of confinement under the Eighth Amendment. Plaintiff also brings state law claims against Dr. Baniga for personal injury, medical malpractice, and intentional infliction of emotional distress. He seeks injunctive and declaratory relief and monetary damages.

Plaintiff's substantive allegations may be summarized essentially as follows:

Plaintiff is fifty years old and suffers from numerous gastrointestinal issues stemming from complications from a 1985 operation for a major upper gastrointestinal bleed caused by ulcers. During that surgery, Plaintiff had a two-thirds gastrectomy (partial removal of the stomach), a vagotomy (cutting of the vagus nerve), and a pyloroplasty with duodenal oversew (widening of the opening between the stomach and small intestine).

Because of Plaintiff's surgery, he suffers from Dumping Syndrome and must closely monitor his diet. Otherwise, he experiences tachycardia (an elevated heart rate), stomach and rectal spasms, perfuse sweating, extreme bloating, nausea, dizziness, and colorectal and esophageal damage.

Plaintiff originally received a Therapeutic Special Diet Chrono on August 26, 2010, from the CCI Facility-D Medical Clinic after medical testing by primary care provider ("PCP") Dr. El Said (not a party). Dr El Said concluded that Plaintiff indeed suffered from dumping syndrome. Chief Medical Officer Dr. Clark (not a party) approved the August 26, 2010, Therapeutic Special Diet Chrono.

From August 26, 2010 to January 17, 2012, Plaintiff did not receive a special diet, and on January 17, 2012, he was transferred to the California Institution for Men ("CIM") in Chino, California. Plaintiff states he was transferred so that CCI could avoid Plaintiff filing a section 1983 civil rights suit against the facility, even though he was told that he was being transferred for health and family reasons.

1 | Plaintiff still did not receive a special diet at CIM Chino. After threatening CIM staff with a section 1983 suit, Plaintiff was transferred back to CCI.

At some point after being transferred back to CCI, Plaintiff did eventually receive a special diet and nutritional supplements, but on November 7, 2014, Defendant Dr. Baniga directed Plaintiff's PCP, Defendant Dr. Hill, to discontinue the Special Diet Chrono and deny Plaintiff a consultation with a gastroenterologist for a colonoscopy. Dr. Hill told Plaintiff that Dr. Baniga did not think Dumping Syndrome required a special diet and supplements; Dr. Baniga also allegedly cited to costs as a reason for the discontinuation,

On several occasions, including November 7 and December 26, 2014, and during the third week of February 2015, Plaintiff described to Drs. Baniga and Hill in detail the pain and discomfort he experienced due to his gastrointestinal issues. However, neither Defendant re-instated the Special Diet Chrono. Importantly, Plaintiff claims that neither doctor ever examined Plaintiff before discontinuing the Special Diet.

Although Plaintiff is a chronic care patient and must see a PCP every 90 days, Plaintiff states he has not seen PCP in over six months since Dr. Hill was reassigned in February 2015.

In December 2014, Plaintiff submitted a health care appeal contesting Dr. Baniga's determination that he did not need a therapeutic diet and complaining about Nurse Nixon's inflammatory statements to Plaintiff. On December 26, 2014, Dr. Hill conducted a hearing on Plaintiff's appeal and said that Dumping Syndrome did not warrant liquid nutritional supplements, therapeutic special diets, or a colonoscopy. Defendant Nurse Nixon, who was present at the interview with Dr. Hill, minimized Plaintiff's pain, suffering, and emotional distress, telling Plaintiff that he was a liar like the rest of the inmate population and that he did not need and would not get a special diet or a colonoscopy.

At the first level of review of Plaintiff's appeal, Dr. Baniga issued a decision granting Plaintiff's request that medical staff cease making rude statements against Plaintiff, but denying his request for a therapeutic diet and a referral to a gastroenterologist on the grounds that they were not medically necessary.

Plaintiff then appealed to the second level, where Dr. Sheisha upheld the denial of Plaintiff's request for a therapeutic diet and a referral to a gastroenterologist,.

At the Director's level of appeals, Deputy Director J. Lewis again denied Plaintiff's request, noting that Plaintiff was seen by a PCP on February 24, 2015, who determined that Plaintiff's labs did not indicate any deficiencies and documented no dumping episodes since Plaintiff's last visit. Plaintiff's PCP further documented no additional issues found on endoscopy that would warrant a change in Plaintiff's current treatment plan, and advised Plaintiff to adhere to a diet of small meals. The Deputy Director also found that based on Plaintiff's medical evaluation, he did not meet the specified criteria to qualify for nutritional supplements or a therapeutic diet.

In the interim, Plaintiff's parents contacted Defendant Dr. Sheisha, the then-Chief Medical Executive at CCI, and Dr. Baniga via email to discuss Plaintiff's medical issues, to no avail.

On April 22, 2015, Plaintiff filed a Government Claims Form against Dr. Baniga with the California Victim Compensation and Government Claims Board seeking monetary damages regarding his state tort claim arising on November 17, 2014. In a letter dated June 26, 2015, the Victim Compensation and Government Claims Board notified Plaintiff that they had rejected Plaintiff's claim.

Plaintiff suffered and continues to suffer abdominal pain, bloating, cramping, dumping episodes, colorectal spasms, painful bowel movements, elevated heart rate, weakness, damage to his anus, humiliation, and emotional distress as a result of Dr. Baniga's actions. Plaintiff alleges that he has suffered emotional distress to the point of

being entirely distrustful of medical professionals, and is therefore unable to seek treatment for other medical issues (not discussed in his case).

**D.    Analysis**

    **i.    Eleventh Amendment Immunity**

As an initial matter, Plaintiff claims that Defendants, acting in their official capacities as medical staff personnel at CCI, failed to provide adequate medical care in violation of the Eighth Amendment.

"The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state." Brooks v. Sulphur Springs Valley Elec. Co., 951 F.2d 1050, 1053 (9th Cir.1991); see also Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Puerto Rico Aqueduct Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993). The Eleventh Amendment also bars suits against a state's agencies. See Puerto Rico Aqueduct, 506 U.S. at 144; Brooks, 951 F.2d at 1053; Mitchell v. Los Angeles Community College Dist., 861 F.2d 198, 201 (9th Cir. 1989). Thus, California prisons are entitled to Eleventh Amendment immunity. Lopez v. Wasco State Prison, No. 1:08–CV–889-AWI-TAG, 2008 WL 5381696, at *4 (E.D. Cal. Dec. 22, 2008) (citing Keel v. California Dept. of Corrections and Rehabilitation, No. 1:05CV01298-AWI-LJO, 2006 WL 1523121, *2 (E.D. Cal. May 30, 2006)). A suit brought against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989), Brandon v. Holt, 469 U.S. 464, 471 (1985). That suit is therefore no different from a suit against the state or state agency itself. Will, 491 U.S. at 71. Thus, to the extent Plaintiff seeks damages against Defendants in their official capacities, those Defendants are entitled to Eleventh Amendment immunity and those claims must be dismissed.

    **2.    Eighth Amendment Medical Indifference**

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v.

Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones, 297 F.3d at 934. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Crowley v. Nevada ex rel. Nevada Sec'y of State, 678 F.3d 730, 734 (9th Cir. 2012) (citing Graham v. Connor, 490 U.S. 386, 393-94 (1989)) (internal quotation marks omitted). To state a claim, Plaintiff must allege facts demonstrating the existence of a link, or causal connection, between each defendant's actions or omissions and a violation of his federal rights. Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

For Eighth Amendment claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds*, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

Plaintiff alleges that he suffers from chronic and painful gastrointestinal distress due to a surgery he had in 1985 to remove a portion of his digestive tract. This amounts to an objectively serious medical need. Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (existence of chronic or substantial pain indicates a serious medical need) (citation omitted); *accord* Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000).

The second element of an Eighth Amendment claim is subjective deliberate indifference, which involves two parts. Lemire, 726 F.3d at 1078. Plaintiff must demonstrate first that the risk was obvious or provide other circumstantial evidence that Defendants were aware of the substantial risk to his health, and second that there was no reasonable justification for exposing him to that risk. Id. (citing Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010)) (quotation marks omitted). There must be some causal connection between the actions or omissions of each named defendant and the violation at issue; liability may not be imposed under a theory of *respondeat superior*. Iqbal, 556 U.S. at 676-77; Lemire, 726 F.3d at 1074-75; Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

A mere difference of medical opinion is insufficient to establish deliberate indifference. Jackson v. MacIntosh, 90 F.3d 330, 332 (9th Cir. 1996). For a prisoner to prevail on a claim involving choices between alternative courses of treatment, he must show that the chosen course of treatment was "medically unacceptable under the circumstances" and was chosen "in conscious disregard of an excessive risk to the prisoner's health." Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (citing Jackson, 90 F.3d at 332.)

First, Plaintiff fails to provide facts to support *any* claims with regards to Defendants Medical Staff Doe(s) 1 through 10. Jones, 297 F.3d at 934. Therefore, all claims against these Defendants should be dismissed. Ingram v. Brewer, No. 1:07-cv-00176-OWW-DLB, 2009 WL 89189 (E.D. Cal. January 12, 2009) ("In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.").

With regards to Dr. Baniga and Dr. Hill, the allegations establish that Plaintiff received a special diet sometime after his January 17, 2012, transfer back to CCI and it continued through November 7, 2014, when Dr. Baniga discontinued it. Importantly,

Plaintiff alleges that neither doctor examined Plaintiff prior to discontinuing the diet on November 7. Despite Plaintiff's numerous complaints to Dr. Baniga and Dr. Hill regarding the negative effects of discontinuation of the diet, neither of these Defendants reinstated the Special Diet Chrono because the diet was unnecessary.

Based on these facts, which must be taken as true at this point of the proceedings, Plaintiff makes a cognizable claim against Drs. Baniga and Hill for medical indifference under the Eighth Amendment. Plaintiff has shown that both doctors were aware of Plaintiff's serious medical needs, yet chose to switch him to a different course of treatment without first examining him to ensure the change was appropriate and they delayed a follow up examine until approximately August 2015, despite his continuing notice that the new treatment plan was not working.

As for Nurse Nixon, Plaintiff's only contention is that this Defendant made derogatory remarks during the December 2014 hearing. While such words may be hurtful, "[v]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (quoting Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)).

### 3. Supervisory Liability

Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on *respondeat superior*, or vicarious liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); *accord* Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Crowley, 734 F.3d at 977 (citing Snow, 681 F.3d at 989) (internal quotation marks omitted); *accord* Lemire, 726 F.3d at 1074-75("A prison official in a supervisory position may be held liable under § 1983 . . . 'if he or she was personally involved in the

constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation.'") (quoting Lolli v. Cnty. of Orange, 351 F.3d 410, 418 (9th Cir. 2003)); Lacey, 693 F.3d at 915-16. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

Plaintiff fails to set forth any facts linking the denial of adequate medical care to Defendant Sheisha. He alleges only that his parents mailed a letter to Dr. Sheisha complaining of the inadequate medical care. Not only is this insufficient to impute knowledge on Dr. Sheisha, but, as explained above, there is also no supervisory liability in a Section 1983 action. Plaintiff's claims against Dr. Sheisha will therefore be dismissed with leave to amend.

### 4. Reviewing Plaintiff's Appeal

Moreover, Plaintiff's dissatisfaction with the appeals process and the responses to his appeals does not suffice to demonstrate that Defendant Sheisha knew of and disregarded Plaintiff's serious medical needs. Peralta, 744 F.3d at 1086-87 (prison official who signed off inmate's second-level appeal after relying on the medical opinions of staff dentists who had already signed off on inmate's treatment plan found not liable under § 1983); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (actions in reviewing inmate appeal do not support viable claim because there is no separate constitutional entitlement to appeals process).

### 5. California State Tort Claim

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case

11

or controversy under Article III [of the Constitution]," except as provided in subsections (b) and (c). "[Once judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." ACI v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board ("the Board"), formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Govt. Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2009). Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. State v. Super. Ct. of Kings Cty. (Bodde), 90 P.3d 116, 124 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act. State v. Super. Ct., 90 P.3d at 124; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988). An action must be commenced within six months after the claim is acted upon or is deemed to be rejected. Cal. Govt. Code § 945.6; Moore v. Twomey, 16 Cal. Rptr. 3d 163 (Cal. Ct. App. 2004).

Plaintiff has sufficiently alleged compliance with the Tort Claims Act. Plaintiff filed his state tort claim on April 22, 2015. As Plaintiff's claim accrued on November 7, 2014, his state claim was timely filed. Furthermore, Plaintiff received notice that the Board rejected his claim on June 26, 2015. He then filed the instant suit on October 23, 2015. Therefore, the Court may consider whether Plaintiff has sufficiently stated a state tort cause of action at this juncture.

### a. Negligence

A public employee is liable for injury to a prisoner "proximately caused by his negligent or wrongful act or omission." Cal. Gov't Code § 844.6(d). Under California law, "'[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'" Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting McGarry v. Sax, 158 Cal. App. 4th 983, 994 (2008)).

In a negligence action the plaintiff must show the defendant's act or omission (breach of duty) was a cause of the plaintiff's injury. Jackson v. Ryder Truck Rental, Inc., 16 Cal. App. 4th 1830, 1846 (1993). The element of causation generally consists of two components. Id. at 1847. The plaintiff must show (1) the defendant's act or omission was a cause in fact of the plaintiff's injury, and (2) the defendant should be held responsible for negligently causing the plaintiff's injury. Id. The second component is a normative or evaluative one that asks whether the defendant should owe the plaintiff a legal duty of reasonable care under the circumstances of the case.

Plaintiff has met his initial burden of showing that Dr. Baniga, as the Chief Physician and Surgeon of CCI, owed Plaintiff a duty of care. Furthermore, Plaintiff has alleged that Dr. Baniga breached that duty when he rescinded Plaintiff's therapeutic diet without conducting a medical examination of Plaintiff, leading Plaintiff to experience extreme gastrointestinal distress. At this juncture, Plaintiff has adequately stated a claim for negligence.

### b. Intentional Infliction of Emotional Distress

Under California law, the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's

13

suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. Corales, 567 F.3d at 571. Conduct is outrageous if it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. Id. In addition to the requirement that the conduct be intentional and outrageous, the conduct must have been directed at Plaintiff or occur in the presence of Plaintiff of whom Defendant was aware. Simo v. Union of Needletrades, Indus. & Textile Employees, 322 F.3d 602, 622 (9th Cir. 2003).

Plaintiff alleges that Dr. Baniga cut off Plaintiff's therapeutic diet because of cost restraints and because Dr. Baniga did not believe the diet was medically necessary. Plaintiff states he was harmed and as a result suffered severe emotional distress, including humiliation, avoidance of crowds, difficulty sleeping, and distrust of all medical providers. Plaintiff, however, has failed to show that Dr. Baniga discontinued Plaintiff's therapeutic diet with the intention of causing harm. Therefore, these allegations do not state a claim for intentional infliction of emotional distress.

### c. Negligent Infliction of Emotional Distress

Negligent infliction of emotional distress is not a separate tort, but rather falls under the tort of negligence. Macy's California, Inc. v. Super. Ct., 41 Cal. App.4th 744, 748 (1995). "A cause of action for negligent infliction of emotional distress requires that a plaintiff show (1) serious emotional distress, (2) actually and proximately caused by (3) wrongful conduct (4) by a defendant who should have foreseen that the conduct would cause such distress." Austin v. Terhune, 367 F.3d 1167, 1172 (9th Cir. 2004). It is settled in California that in ordinary negligence actions for physical injury, recovery for emotional distress caused by that injury is available as an item of parasitic damages. Crisci v. Security Insurance Co., 66 Cal.2d 425, 433 (1967); Merenda v. Super. Ct., 3 Cal. App. 4th 1, 8–9 (1992).

For the reasons stated above regarding Plaintiff's claims for negligence and intentional infliction of emotional distress, the Court concludes that Plaintiff has stated a cognizable claim for negligent infliction of emotional distress.

### d. Medical Malpractice

In a medical malpractice action, the plaintiff must establish: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Tortorella v. Castro, 140 Cal. App. 4th 1, 3 n.2 (2006); Hanson v. Grode, 76 Cal. App. 4th 601, 606 (1999). "The standard of care in a medical malpractice case requires that medical service providers exercise that . . . degree of skill, knowledge and care ordinarily possessed and exercised by members of their profession under similar circumstances." Barris v. County of Los Angeles, 20 Cal. 4th 101, 108 (Cal. 1999); Landeros v. Flood, 17 Cal. 3d. 399, 408 (1976).

Plaintiff alleges that Dr. Baniga committed medical malpractice when he rescinded the therapeutic diet prescribed by Plaintiff's former PCP without ever conducting a physical examination of Plaintiff, thereby causing Plaintiff to experience extreme gastrointestinal distress. These allegations are sufficient to make out a claim for medical malpractice.

### e. Defamation

The tort of defamation "involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." 5 Witkin, Summary 10th (2005) Torts, § 529, at 782 (citing Cal. Civ. Code, §§ 45–46 and cases); Taus v. Loftus, 151 P.3d 1185, 1209 (2007). An essential element of defamation is that the publication in question must contain a false statement of fact. Gregory v. McDonnell Douglas Corp., 552 P.2d 425, 427 (1976).

Plaintiff claims Nurse Nixon committed the intentional tort of defamation when he called Plaintiff a liar. Plaintiff has failed to show that this statement injured Plaintiff in anyway, or that this statement contained a false statement of fact rather than simply Nurse Nixon's opinion. He has therefore failed to make out a claim.

### 6. Declaratory Relief

Plaintiff seeks declaratory relief. However, because his claims for damages necessarily entail a determination of whether his rights were violated, his separate request for declaratory relief is subsumed by those claims. Rhodes v. Robinson, 408 F.3d 559, 566 n.8 (9th Cir. 2005). Therefore, this action properly proceeds as one for damages only.

## III. Conclusion and Recommendation

Plaintiff's complaint states a cognizable claim against Defendants Baniga and Hill for violation of the Eighth Amendment and against Defendant Baniga for negligent infliction of emotional distress, ordinary negligence, and medical malpractice, arising out of the treatment of his chronic gastrointestinal issues without a liquid nutritional supplement, therapeutic diet, or referral to a gastroenterologist. Plaintiff has failed to state any cognizable claims against Defendants Nixon, Sheisha, and Medical Staff Doe(s) 1 through 10, and he has failed to make out a claim against Dr. Baniga for intentional infliction of emotional distress.

Therefore, it is HEREBY RECOMMENDED that:

1. Plaintiff continue to proceed on his cognizable claim against Defendants Baniga and Hill for violation of the Eighth Amendment and against Defendant Baniga for negligent infliction of emotional distress, ordinary negligence, and medical malpractice; and

2. All other claims and all other defendants be dismissed with prejudice.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C.

§ 636(b)(1). Within fourteen (14) days after being served with the findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: April 6, 2018      /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE