UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL ANTHONY ACINELLI, JR.,<br><br>Plaintiff,<br><br>v.<br><br>ULYSSES VILLAMIL BANIGA, *et al.*,<br><br>Defendants. | Case No. 1:15-cv-01616-JDP<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>ECF No. 20 |

Plaintiff is a state prisoner proceeding without counsel in this civil rights action brought under 42 U.S.C. § 1983. This action now proceeds against defendants Baniga and Hill on plaintiff's Eighth Amendment claims for deliberate indifference and against defendant Baniga on plaintiff's claims arising under state tort law. The parties have consented to Magistrate Judge jurisdiction. ECF No. 4; ECF No. 19.

On August 14, 2017, defendants moved for summary judgment. ECF No. 20. Plaintiff filed an opposition on November 17, 2017. ECF No. 26. Defendants filed an untimely reply on January 25, 2018.[1] ECF No. 27; ECF No. 28; ECF No. 29. On April 10, 2018, the prior Magistrate Judge assigned to this case issued findings and recommendations that defendants'

---

[1] In adjudicating defendants' August 14, 2017 motion, we declined to consider defendants' untimely reply.

1

motion for summary judgment be partially denied. ECF No. 31. On June 12, 2018, we vacated those findings and recommendations pursuant to a district judge's instruction that this case proceed as a consented case, within the sole jurisdiction of the Magistrate Judge. ECF No. 41. Defendants' motion for summary judgment is now back before the court for our review. For the reasons stated below, we will grant defendants' motion.

## I. LEGAL STANDARDS

### a. Summary Judgment

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

Each party's position must be supported by (1) citing to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider other materials in the record not cited to by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this

initial burden, the burden then shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (citing *Celotex Corp.,* 477 U.S. at 323). The non-moving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). However, the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated there to be no genuine issue of material fact and that judgment is appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002).

### b. Deliberate Indifference to Serious Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotation marks omitted)). "This second prong— defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm

caused by the indifference." *Id.* (citing *McGuckin*, 974 F.2d at 1060). Indifference may be manifest "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* When a prisoner alleges a delay in receiving medical treatment, the delay must have led to further harm for the prisoner to make a claim of deliberate indifference to serious medical needs. *See McGuckin*, 974 F.2d at 1060 (citing *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Id.* (quoting *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Id.* at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." *Id.* (citing *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990)). Additionally, a difference of opinion between an inmate and prison medical personnel—or between medical professionals—on appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *See Toguchi*, 391 F.3d at 1058; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

**II.  SUMMARY JUDGMENT RECORD**

To decide a motion for summary judgment, a district court may consider materials listed in Rule 56(c). Those materials include depositions, documents, electronically-stored information, affidavits or declarations, stipulations, party admissions, interrogatory answers, "or other materials." Fed. R. Civ. P. 56(c). A party may object that an opponent's evidence "cannot be presented in a form that would be admissible" at trial, *see* Fed. R. Civ. P. 56(c)(2), and the court ordinarily rules on evidentiary objections before deciding a summary judgment motion to determine what materials the court may consider. *See Norse v. City of Santa Cruz*, 629 F.3d 966,

973 (9th Cir. 2010); *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 845 (9th Cir. 2004). Here, defendants present the declaration of Bruce P. Barnett, ECF No. 20-3; the declaration of Kiwana Hill, ECF No. 20-4; and the declaration of Ulysses Baniga, ECF No. 20-5. Plaintiff presents his declaration, his mother and father's declarations, the declaration of Robert Alan Mann II, administrative grievance records, defendants' answer, guidance documents from California Correctional Health Care Services, chronos,[2] documents explaining medical conditions and treatments, and voluminous medical records. ECF No. 26.

Plaintiff raises numerous objections to defendants' evidence. ECF No. 26. Many of these objections are immaterial to the court's ruling, and the court will therefore decline to address them. *See Norse*, 629 F.3d at 973. The court will, however, address plaintiff's objection to the declaration of Dr. Barnett. Plaintiff contends that Barnett, as a general practitioner, is "not a qualified expert in the field of gastroenterology" and that he did not personally examine plaintiff. ECF No. 26 at 21.

Plaintiff's objection is not well taken. Rule 702 of the Federal Rules of Evidence permits a party to offer testimony by a "witness who is qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. This Rule embodies a "relaxation of the usual requirement of firsthand knowledge," *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592, (1993), and requires that certain criteria be met before expert testimony is admissible. The Rule sets forth four elements, allowing such testimony only if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. These criteria can be distilled to two overarching considerations: "reliability

---

[2] A chrono is a CDCR form that a physician may complete if an inmate requires an accommodation due to a medical condition. The form certifies to prison staff that an inmate is entitled to the accommodation.

5

and relevance." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011). The inquiry does not, however, "require a court to admit or exclude evidence based on its persuasiveness." *Id.*

In view of these standards, the declaration at issue may be considered by the court. Even though Barnett is a general practitioner rather than a gastroenterologist, his medical opinions appear to be both reliable and relevant. Indeed, he alleges that his expertise includes "the management of acute and chronic gastrointestinal complaints." Barnett Decl. ¶ 2. Further, it matters not that Barnett did not personally examine plaintiff because first-hand knowledge is not required for an expert to testify. *See Daubert*, 509 U.S. at 592.

### A. The Factual Record

In accordance with Local Rule 260, defendants filed a statement of undisputed facts, ECF No. 20-2, and plaintiff filed a reproduction of that statement with admissions and denials as appropriate, ECF No. 26 at 31-46. The court has summarized the facts below, calling attention to relevant disputes.

#### i. Background

Plaintiff is a state prison inmate incarcerated at California Correctional Institution ("CCI") in Tehachapi, California. Compl. at 1. Dr. Hill was plaintiff's primary care physician ("PCP") at CCI in 2014. Barnett Decl. ¶ 10. Dr. Ulysses Villamil Baniga worked at CCI as Chief Physician and Surgeon. Compl. at 3; Baniga Decl. ¶ 7.

Plaintiff suffers from dumping syndrome, a condition in some patients who have undergone surgery on the stomach and intestines that causes bloating, nausea, diarrhea, dizziness, weakness, sweating, and a rapid heartbeat. Acinelli Jr. Decl. ¶ 4, Ex. S; Barnett Decl. ¶ 10. Patients with dumping syndrome have difficulty digesting large amounts of any kind of food. Barnett Decl. ¶ 14. Plaintiff also suffers from gastroesophageal reflux disease ("GERD"), has a chronically sore throat, and has difficulty swallowing. Acinelli Jr. Decl. ¶ 18.

The parties dispute whether dietary accommodations, such as liquid nutritional supplement ("LNS"), are medically necessary for plaintiff. *Compare* Barnett Decl. ¶ 10-11, 13, *with* Acinelli Jr. Decl. ¶ 5; Eleanor Acinelli Decl. ¶¶ 7-8. Plaintiff submits evidence showing that

he has been told by various medical professionals that he requires a "special therapeutic diet," consisting of small, frequent meals with certain dietary restrictions. Eleanor Acinelli Decl. ¶¶ 7-8; *accord* Acinelli Jr. Decl. ¶ 5. In opposition, defendants submit evidence showing that the prison's standard heart-healthy diet is suitable for plaintiff's needs and that he may eliminate troublesome food items from his diet as necessary. Barnett Decl. ¶ 14. Defendants' evidence shows that LNS is not indicated to treat plaintiff's dumping syndrome and that LNS may have actually exacerbated his condition. *See* Barnett Decl. ¶ 22. To the extent that plaintiff requires small, frequent meals, defendants presented evidence that they believed that "he should be able to eat multiple small meals without specific accommodation from medical." Hill Decl. ¶ 9.

### ii. Dr. Hill's Treatment of Plaintiff

On July 29, 2013, plaintiff had his first medical appointment with Dr. Hill. Hill Decl. ¶ 3. Upon reviewing plaintiff's chart, Dr. Hill confirmed that plaintiff had been recommended to have frequent small meals due to his dumping condition. *Id.* ¶ 8. Custody officials informed Dr. Hill that additional meals would not be provided as an accommodation to inmates at CCI, so Dr. Hill provided plaintiff with a chrono for LNS, thereby allowing plaintiff to "drink throughout the day in lieu of multiple small meals." *Id.*; *accord* Acinelli Decl. ¶ 15.

Plaintiff's chrono for LNS was rescinded in November 2014. Hill Decl. ¶ 9. The parties dispute the reasons for the rescission. Defendant Hill alleges:

> In November, 2014, Plaintiff's case was reviewed by the Medical Authorization Review Subcommittee (MAR), which was chaired by Dr. Baniga, the then Chief Physician and Surgeon at CCI. In presenting Plaintiff's case to MAR, I advised the committee of his history and recommended dietary needs. They informed me that he should be able to eat multiple small meals without specific accommodation from medical and, that since LNS is not indicated for Dumping Syndrome,[3] it should not be renewed. This advice was based on Plaintiff's normal labs, stable vitals and documentation that Plaintiff was actually overweight, as determined by calculated body mass index (BMI). I did not disagree with their recommendation. As such, on November 7, 2014, I advised Plaintiff that LNS would be discontinued at the recommendation of

---

[3] According to Barnett, LNS "is not a recognized, appropriate or even safe treatment for dumping." Barnett Decl. ¶ 22. "There is no evidence in the medical record that any dietitian or gastroenterology expert recommended treatment with LNS (Boost)." *Id.*

7

> the MARS committee because I could not medically justify his
> continued need for it.

Hill Decl. ¶ 9. Dr. Hill further states that the LNS was not discontinued for financial reasons, and that she did not tell plaintiff otherwise. *Id.* ¶ 10. Hill allegedly advised plaintiff in a follow-up interview that his vital signs and weight would be monitored intermittently and that he should present to the clinic if he experienced any symptoms related to dumping syndrome. Hill Decl. ¶ 10.

Defendant explains the discontinuance of his LNS differently:

> On November 7, 2014, see Exh. G-20, I met with Dr. Hill in [an] open area of Facility-D Medical Clinic, sitting in [a] blue plastic chair, while Hill stood by the desk with several custody staff present as she explained that her new boss (Baniga) was making cuts to save money, resources, and stated that he (Baniga) told her to cancel the L.N.S. because Dumping Syndrome doesn't warrant it, and that "I was working Hill." Dr. Hill said to me, I would 602 him, (Baniga), if I were you. I responded that not only will I write Baniga up, I'm going to file the § 1983 Civil Rights Complaint that I originally started in October-November 2011 . . . .

Acinelli Decl. ¶ 17.

The parties also dispute whether plaintiff's health deteriorated after dietary accommodations were rescinded. Defendant Hill alleges:

> For the remainder of her time as Plaintiff's PCP, Plaintiff continued to be medically stable with normal labs and maintenance of his weight and documentation by nursing staff of his vitals and demeanor showed no indication that he was experiencing sequelae of dumping syndrome, to include tenderness on palpation of his abdomen, vomiting, sweating or rapid heartbeat.

Hill Decl. ¶ 11. Plaintiff, on the other hand, contends that, after his dietary accommodation was revoked, he suffered dumping episodes, vitamin deficiencies, and that he has "continuous low Monoctye levels." Acinelli Decl. ¶¶ 21, 27, 31, 34, 35, 37.

The parties also dispute whether Dr. Hill was deliberately indifferent in not performing a colonoscopy on plaintiff. Hill states that plaintiff did not have any immediate medical need for the colonoscopy he was requesting. Hill Decl. ¶ 11. Contrarily, plaintiff states that Dr. Hill told

8

him that he "would be needing" a colonoscopy because he was approaching 50 and his father had colon cancer, but she nonetheless failed to perform a colonoscopy. Acinelli Decl. ¶ 15.

### iii. Dr. Baniga

The parties dispute the role of Dr. Baniga in plaintiff's care. Plaintiff contends that Baniga ordered Hill to rescind the LNS. Acinelli Decl. ¶ 17. Plaintiff states that Baniga "personally told [him]" that the denial of the special diet and colonoscopy "was his decision and if [plaintiff] didn't like it to write him up." Acinelli Decl. ¶ 14 (citing Answer ¶ 5 (admitting that plaintiff spoke with Baniga in February 2015)).

Contrarily, defendants allege that Baniga only advises PCPs, and he is without "authority to force subordinate physicians to prescribe or treat patients in a fashion deemed inappropriate by that physician." Barnett Decl. ¶ 12; *accord id.* ¶ 27. Defendants allege that Baniga never ordered Hill to cancel plaintiff's LNS, rescind his therapeutic special diet, or deny him a consult for a colonoscopy. Baniga Decl. ¶ 4; Hill Decl. ¶ 10; Barnett Decl. ¶ 12. In his declaration, Baniga states that his only involvement with plaintiff's dumping syndrome condition occurred in November 2014 when plaintiff's case was reviewed by the Medical Authorization Review Subcommittee that he chaired. Baniga Decl. ¶ 7. He states that he never spoke with or treated plaintiff. Baniga Decl. ¶ 4, 5; *see also* Barnett Decl. ¶ 28.

## III. DISCUSSION

### A. Rescission of the Dietary Accommodations Chrono

We first consider whether defendants, the moving party, have met their initial burden of "proving the absence of a genuine issue of material fact" and showing prima facie entitlement to summary judgment on the issue of the rescission of plaintiff's dietary accommodations chrono. *Celotex Corp.*, 477 U.S at 323. Defendants present evidence that their decision to rescind the chrono for dietary accommodations, including LNS, was motivated not by malice or money, but by lack of medical necessity. Specifically, defendants' evidence shows that:

> [Plaintiff's] demand for LNS from Dr. Hill and Dr. Baniga was misguided. As is the case for all medical services, a prescription to augment an inmate's diet with LNS is only proper when a medical need for LNS can be demonstrated. Medical care guidelines

9

> promulgated at the CCHCS to ensure delivery of appropriate and necessary care explicitly establish indications for LNS that DO NOT include dumping syndrome. LNS is indicated for patients with evidence of malnutrition (substantial weight loss, BMI below 18 or abnormally low serum protein) or in patients unable to chew/swallow).

Barnett ¶ 21; *see also id.* ¶¶ 22-23 ("LNS is not a recognized, appropriate or even safe treatment for dumping . . . . In fact, the concentrated caloric/osmotic content will actually precipitate dumping symptoms in many patients."). Further, defendants believed that plaintiff's dietary needs were being met and that he could eat small, frequent meals without an accommodation. Hill Decl. ¶¶ 9, 13; Baniga Decl. ¶ 7.

Defendants' evidence negates the second prong of the deliberate indifference inquiry, which is "satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference," *Jett*, 439 F.3d at 1096, because defendants believed that CDCR's standard heart-healthy diet met plaintiff's dietary needs and that LNS was not indicated. Therefore, defendants have met their initial burden.

The burden now shifts to plaintiff to present specific facts that show there to be a genuine issue of a material fact. *See* Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. Plaintiff contends that his claim satisfies the second prong of the inquiry because defendants' actions were malicious: "The fact that medical care was denied when needed, or wrongfully refused when medical need shown, is in itself evidence that the Defendants were blatantly, intentionally, willfully, wantonly, maliciously, and callously refusing proper and adequate medical care . . . ." *Id.*

Plaintiff's argument is unpersuasive. As discussed above, "[d]eliberate indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060. "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). Here, there is no evidence that defendants were aware of any substantial risk of serious harm to plaintiff's health. Specifically, plaintiff offers no evidence to rebut defendants' statements that they believed that LNS was not indicated for dumping

10

syndrome, Baniga ¶ 7; Hill ¶ 9; *see also* Barnett ¶ 21-23, and that plaintiff "should be able to eat multiple small meals without specific accommodation from medical," Hill Decl. ¶ 9. Without any evidence from plaintiff rebutting these statements, defendants' actions cannot qualify as deliberate indifference, even if plaintiff did need the LNS or plaintiff was, in fact, unable to eat multiple small meals without a chrono from medical. *See Toguchi*, 391 F.3d at 1057 ("If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.").

### B. Failure to Provide Colonoscopy

We next consider whether defendants have met their initial burden of "proving the absence of a genuine issue of material fact" and showing prima facie entitlement to summary judgment on the issue of the defendants not providing plaintiff with a colonoscopy promptly at age 50. *Celotex Corp.*, 477 U.S at 323. Defendants present evidence that "Acinelli did not have any immediate medical need for the colonoscopy he was requesting to be approved by Dr. Hill and Dr. Baniga." *Id.* ¶ 25. "Screening tests, including [complete blood count] and fecal occult blood testing, did not indicate that he was a high risk for colon pathology." Hill Decl. ¶ 14. Hill also opined that plaintiff's family history did not indicate a high risk for colon pathology. *Id.* The U.S. Centers for Disease Control and Prevention recommend either a colonoscopy or sigmoidoscopy every five to ten years beginning at age 50 for screening purposes. Barnett Decl. ¶ 25. In 2014, plaintiff had just turned 50, so there was "no urgent need to perform a screening colonoscopy." *Id.*

Considering defendants' evidence, the court finds that defendants have "negat[ed] an essential element of the nonmoving party's claim." *Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1102. Specifically, defendants' evidence negates the first prong of the deliberate indifference inquiry—plaintiff must show "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" *Jett*, 439 F.3d at 1096—because defendants' evidence shows that plaintiff did not require a colonoscopy.

Because defendants satisfied their initial burden, the burden shifts to plaintiff to present specific facts that show there to be a genuine issue of a material fact. *See* Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. The only evidence plaintiff presents to show that a colonoscopy was medically necessary are his allegations that his father had colon cancer and that Dr. Hill told him he "would be needing" a colonoscopy because he was approaching 50. Acinelli Decl. ¶ 15.

Plaintiff has failed to establish that the performance of a colonoscopy was medically necessary. While plaintiff's evidence shows that immediate screening at age 50 may have been prudent, it does not demonstrate medical necessity. *See also* Barnett Decl. ¶ 25 ("[T]he US Centers for Disease Control and Prevention recommend either a colonoscopy or sigmoidoscopy with stool blood testing every 5-10 years beginning at age 50 for screening purposes.").

In sum, the evidence, construed in favor of plaintiff, is insufficient to raise a triable issue (1) whether defendants were deliberately indifferent when they rescinded his dietary accommodation or (2) whether plaintiff had "a serious medical need" for a colonoscopy. *Jett*, 439 F.3d at 1096. We therefore conclude that there is no genuine issue of material fact and that defendant is entitled to summary judgment.[4]

### IV. ORDER

Accordingly,

1. defendants' motion for summary judgment, ECF No. 20, is granted; and
2. the clerk of the court is directed to close this case.

IT IS SO ORDERED.

Dated: April 15, 2019

_____
UNITED STATES MAGISTRATE JUDGE

No. 203.

---

[4] The court has found that summary judgment is appropriate on the merits. Therefore, we need not address the remaining issues.